UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PATRICIA FOUNTAIN PRESCOTT,                  )
                                             )
    Plaintiff                               )
                                             )
v.                                           )    Civil No. 1:09-cv-00522-JAW
                                             )
SOCIAL SECURITY ADMINISTRATION               )
COMMISSIONER,                                )
                                             )
    Defendant                               )

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Patricia Fountain Prescott, 41 years old as of her April 27, 2007, application for benefits, has severe limitations consisting of obstructive airway disease, borderline intellectual functioning, and somatoform disorder, but retains the capacity to engage in substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Prescott's application for supplemental security income under Title XVI of the Social Security Act.  Prescott commenced this civil action for judicial review of the final administrative decision, alleging errors at Steps 2, 4, and 5 of the sequential evaluation process.  I recommend that the Court affirm.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion of Plaintiff's Statement of Errors

The Commissioner's final decision is the May 14, 2009, decision of the Administrative Law Judge (R. 9-30) because the Decision Review Board did not complete its review in the time allowed (R. 1). The Judge's decision tracks the Commissioner's five-step sequential evaluation process outlined at 20 C.F.R. § 416.920.

The Judge determined that Prescott has not engaged in substantial gainful activity since her April 27, 2007, application date, satisfying Step 1 of the process. (Finding 1, R. 14.)

At Step 2, the Judge found the following impairments severe, causing more than a slight limitation in ability to perform basic work functions: obstructive airway disease, borderline intellectual functioning, and somatoform disorder.[1] (Finding 2, R. 14.) He further found that certain dental problems and affective and anxiety related disorders were non-severe. (R. 14-15.) Prescott alleges error at Step 2 in the exclusion of "major depression." (Statement of Errors at 3-4.)

At Step 3, the Judge found that those impairments he considered severe at Step 2 were not severe enough, individually or in combination, to meet or equal a listing in the Commissioner's Listing of Impairments.[2] (Finding 3, R. 15-16.) Prescott does not contest this finding in her Statement of Errors.

---

[1] The Commissioner describes somatoform disorder as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.07.

[2] The Commissioner's Listing identifies impairments or combinations of impairments that are so severe that an inability to perform substantial gainful activity can be presumed, thereby qualifying a claimant for benefits at Step 3 without consideration of the claimant's residual functional capacity at Steps 4 and 5. 20 C.F.R. §§ 404.1520(d), 416.920(d).

At Step 4, the Judge found that Prescott has a residual functional capacity to perform "light work . . . except work that requires concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., or that involves more than moderately complex or detailed instructions." (Finding 4, R. 16.) The Judge assumed that Prescott had no relevant past work to analyze at Step 4. (Finding 5, R. 28.) Prescott alleges error in the finding that she has the residual capacity to perform "moderately complex or detailed" work and further error based on the failure to factor in limitations arising from major depression, stress, or any social limitation. (Statement of Errors at 5-9.) There is no objection to the finding that Prescott can work at the light exertion level (which includes sedentary jobs as well, as a sedentary capacity is not contra-indicated by the record).

At Step 5, the Judge concluded that Prescott could engage in substantial gainful activity in jobs that exist in significant numbers in the national economy. (Finding 9, R. 18.) Prescott alleges error in this finding as well, arguing that the Judge failed to identify positive evidence of her ability to engage in specific jobs. (Statement of Errors at 9-13.) The following discussion addresses the allegations of error at Steps 2, 4 and 5.

**A.**     **Step 2**

At Step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairments must be expected to result in death or have lasted or be expected to last for a continuous period of at least 12 months. Id. § 416.909. As for the severity requirement, the claimant's burden at Step 2 is a *de minimis* burden, designed simply to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118,

3

1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the Commissioner may make a determination at Step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At Step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. § 416.928.

The Administrative Law Judge did not belabor his discussion of affective and anxiety disorders in his Step 2 finding, but simply indicated they were not severe and that the Step 2 finding would be "further supported by the analysis of residual functional capacity and medical opinions" in later findings. (R. 14-15.) Subsequently, at Step 4, the Judge explained that depression and anxiety did not satisfy the durational requirement of the Social Security Act because the evidence did not show that the impairments were severe for 12 months or longer. (R. 26.) In the Judge's view, the record reflected "that the claimant may have had depression and anxiety of moderate severity for a time but that symptoms of the disorder were quickly relieved well within 12 months of the alleged onset date to a point that they caused no more than mild restrictions." (R. 26.)

Prescott alleges error because she received a diagnosis of "major depression" for a "current psychological state of depression" in November 2006 from Brian Rines, Ph.D. (R. 220), based on evaluation in "early October" 2006 (R. 215), and the diagnosis has persisted on her post-onset date medical records since it was introduced by Dr. Rines. Prescott says her medical records prove that her depression met the duration requirement, citing a discharge summary report from Kennebec Behavioral Health (Ex. C17F) dated April 2008, which identifies "major

4

depression" as a diagnosis (R. 348). Prescott also observes that, in June 2007, a state consulting psychologist acknowledged the existence of "depression w/ somatic focus" (R. 269) as one component of a combination of mental impairments calling for a residual functional capacity assessment (R. 266).[3] (Statement of Errors at 4-5.)

The Administrative Law Judge did not err in his finding that the record fails to prove the existence of severe depression having at least a12-month duration. Although Prescott cites the Kennebec Behavioral Health discharge summary as an April 2008 document, the exhibit reflects treatment by Nurse Practitioner Janet Zalanskas only through October 4, 2007, for "recurrent" major depressive disorder following a "single episode" in March 2007 that was treated by Judith St. Hillaire. (R. 348-50.) It is noted that after the October 4, 2007, appointment, Prescott missed her next two scheduled appointments and a closing letter went out in March 2008. (R. 350.) As for a start date, Dr. Rines reported that Prescott "clearly met the criteria for a major depression and likely for a[n] undifferentiated somatoform disorder" (R. 218) based on an evaluation he conducted on an unspecified date in "early October" of 2006 (R. 215). Consequently, the record reflects that Prescott obtained the "major depression" diagnosis based on an interview sometime in early October 2006 and maintained it in her treatment records through October 4, 2007, whereupon she discontinued treating for the alleged impairment.[4] Even assuming that this is sufficient to demonstrate, with medical evidence, a condition having a 12-month duration, the

---

[3] Prescott also cites evidence of depression in 2001, but she does not cite any evidence that any impairment in 2001 persisted into 2006. There is nothing in either the Rines report or the Kennebec Behavioral Health records that would link together the alleged 2001 depression with the 2006/2007 depression to reflect the existence of a severe depressive (or anxiety or affective) disorder spanning those years. Moreover, there is a September 2001 psychological evaluation performed by Willard Millis, Jr., Ph.D., on behalf of Disability Determination Services in which it is expressed that Prescott showed no signs of depression or any difficulty with attention and concentration. (R. 342.)

[4] Anxiety disorder appears in the Zalanskas treatment notes at a lesser order of severity (R. 352), but it first appears in May 2007 and concludes in conjunction with the depression. Additionally, Prescott does not identify an underlying diagnosis from an acceptable medical source.

5

2007 treatment records divulge episodic depression and fail to demonstrate a severe condition persisting into October 2007.[5]

The Administrative Law Judge explained in his Step 4 finding why the medical records fail to reliably establish the presence of a severe affective or anxiety disorder lasting 12 months. In that regard, the Judge pointedly indicated that Dr. Kelley's contemporaneous opinion of Prescott's condition and NP Zalanskas's indication of improvement demonstrated that Prescott "may have had depression and anxiety of moderate severity for a time but that symptoms of the disorder were quickly relieved well within 12 months of the alleged onset date." (R. 26.) These medical records are substantial evidence that Prescott did not suffer from a severe affective or anxiety disorder of sufficient duration. The omission of depression- and/or stress-related work restrictions is further addressed in connection with the Step 4 discussion. Even if an error has been made at Step 2, that error is harmless unless the plaintiff can demonstrate that inclusion of the impairment would have changed the outcome of the plaintiff's claim at a subsequent point in the sequential evaluation process. Bolduc v. Astrue, No. 09-cv-220-B-W, 2009 U.S. Dist. Lexis 122049, *10 n.3, aff'd, 2010 U.S. Dist. Lexis 4005, 2010 WL 276280, *4 n.3 (D. Me. Jan. 19, 2010) (citing cases).

**B.  Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. § 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to

---

[5]  Prescott's treating physician, Michaela Clark Kelley, DO, reported to Disability Determination Services in May of 2007 that Prescott's depression was first diagnosed by Dr. Rines, that Prescott has no deficit in, among other things, "concentration, social interaction or adaptation," and that "her depression is improving on her current Zoloft regimen." (R. 222.) Moreover, Prescott alleges an onset date of March 27, 2007. (Pl.'s Fact Sheet, Doc. No. 10-1.)

demonstrate that his or her residual functional capacity does not permit the performance of past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. § 416.920(f). As a component of proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. § 416.960(c)(2); *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003). This is both a burden of production and a burden of persuasion and it remains with the claimant through Step 4. 68 Fed. Reg. 51,153, 51,155.

The Administrative Law Judge found that Prescott has the following residual functional capacity: "[T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except work that requires concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., or that involves more than moderately complex or detailed instructions." (Finding 4, R. 16.) Prescott alleges error in the formulation of the "more than moderately complex or detailed" restriction of the RFC and further error growing out of the omission of major depression from the Step 2 findings. (Statement of Errors at 5-9.) She argues that her RFC should be limited to simple tasks and should include a social restriction as well. (Statement of Errors at 4-5.)

To carry her burden at Step 4, Prescott must demonstrate that her mental impairments, individually or in combination, result in a work restriction not recognized in the Administrative Law Judge's RFC finding. Even assuming that it was error for the Administrative Law Judge to omit depression and anxiety at Step 2 based on lack of sufficient duration, proof of long-term depression and anxiety, in itself, does not demonstrate a vocational deficit, particularly where the condition is treated.

7

Prescott emphasizes that the records from Dr. Rines and Kennebec Behavioral Health reflect a generalized assessment of functioning (GAF) of 47 and 48, reflecting serious symptoms or serious impairment in social, occupational, or school functioning. (Statement of Errors at 4, citing R. 204, 219, 221.) Prescott also cites the opinion of state consulting expert, Scott W. Hoch, Ph.D., who indicated that her mental impairments include an affective disorder labeled "depression w/ somatic focus" (R. 266, 269) in addition to somatoform disorder. However, Dr. Hoch opined that Prescott: (1) can understand and remember complex tasks; (2) is able to attend to simple tasks and complete a normal workweek; (3) can interact with others in one-to-one and small group situations; and (4) can adapt to routine changes adequately, which corresponded with what he opined were moderate limitations in regard to certain concentration and persistence, social interaction, and adaptation categories. (R. 280-82.) According to Prescott, a finding that she suffers "moderate" impairment in relation to concentration, persistence, and pace and social functioning necessitates a residual functional capacity finding that is more restrictive than simple tasks, let alone work of moderate difficulty or complexity. (Statement of Errors at 6-8, citing cases.)

The record persuasively supports the Judge's finding with respect to the omission of a social limitation or an adaptive limitation. The Administrative Law Judge placed significant weight on Dr. Kelley's May 2007 letter to Disability Determination Services, in which she stated that there was *no* deficit in concentration or social interaction and that depression was improving on a Zoloft regimen. (R. 20, 222.) The Judge also emphasized Dr. Kelley's October 2007 progress note reporting normal mood, affect, attention span, and concentration. (R. 20, 360.) The Judge also appropriately factored into his decision the absence of evidence demonstrating a social limitation in the context of Prescott's activities of daily living. (R. 27.) This is substantial

8

evidence in support of the finding that a social limitation is not called for on this record. As for adaptation, Dr. Hoch opined that there is more than a slight limitation (R. 280), but concluded that Prescott "[c]an adapt to routine changes adequately" (R. 282). Although Dr. Hoch indicated that frequent travel would present a problem (id.), Prescott has not suggested that a travel restriction is significant in terms of the unskilled light and sedentary job base.

Prescott says the Administrative Law Judge strayed outside the boundaries of his discretion because he adopted none of the expert opinions that were offered on the issue of concentration. Even if that described a *per se* error—it does not—it is not an accurate description of the Administrative Law Judge's RFC discussion. The Judge stated, after assessing Dr. Kelley's and NP Zalanskas's mental health treatment notes, that these items of evidence would reflect an ability to perform "*at least* simple tasks" involving "simple instruction." (R. 25 (emphasis added).) That assessment obviously is supported by substantial evidence, including Dr. Kelley's letter to Disability Determination Services and Dr. Hoch's mental RFC assessment. The record simply does not demonstrate a disorder of such significance that it would prevent Prescott from maintaining concentration on simple tasks or otherwise preclude her from performing simple tasks.

The remaining question is whether Prescott has adequate record evidence to demonstrate that her other identified mental conditions (borderline intellectual functioning and somatoform disorder) call for a limitation to simple work tasks, simple decisions, and limited social interaction. As for social demands, the record is insufficient to demonstrate that these other impairments give rise to any social impairment, making the distinction between simple tasks and moderately difficult tasks the pivotal issue. In her Statement of Errors, Prescott relies heavily on Dr. Hoch's mental RFC assessment (Statement of Errors at 8) to support a social limitation, but a

9

Disability Determination Services consulting expert's opinion cannot be substituted for evidence from acceptable medical sources. Colson v. Barnhart, Civ. No. 02-108-B-S, 2003 WL 1092745, *3, 2003 U.S. Dist. LEXIS 3695, *7 (D. Me. Mar. 13, 2003) (citing 20 C.F.R. §§ 404.1513(c), 416.913(c)), aff'd, 2003 WL 1956243, 2003 U.S. Dist. LEXIS 6907 (Apr. 24, 2003). Prescott fails to direct the Court to any underlying medical evidence that her alleged cognitive limitations or her somatoform disorder disrupt her ability to engage in the social demands of the workplace. Additionally, other record evidence concerning social aptitude, including Dr. Kelley's letter, offer a counterweight that a reasonable person might accept as adequate to support the Judge's finding on Prescott's social capacity.

The Administrative Law Judge attempted to determine what vocational restrictions Prescott had purely as a consequence of borderline intellectual functioning and somatoform disorder. As for borderline intellectual functioning, the Judge was left to consider two things. First, he considered Prescott's performance on a Wechsler Adult Intelligence Scale test administered in September 2001 by Willard Millis, Jr., Ph.D., who stated that her performance demonstrated she clearly was not mentally retarded and that she demonstrated no indication of a thought disorder. (R. 341.) Dr. Millis also found Prescott had no difficulty concentrating, though she had "relatively low cognitive skills." (R. 342.) Second, the Judge considered the fact that none of Prescott's current medical evaluations from Dr. Rines, Dr. Kelley, and NP Zalanskas offered any indication of cognitive limitation. Given this record, the Judge reasoned: "it appears that the claimant has, at worst, mild borderline intellectual functioning, and that the disorder does not prevent her doing simple or even moderately complex tasks, and carrying out simple to moderately detailed instructions." (R. 26.) In further support of this finding, the Judge observed that Prescott had been able to work as a business manager, completed high school without

10

special education services,[6] and was able to reason, read, and write sufficiently to complete her own disability forms. (Id.) In addition, it bears noting that Dr. Hoch's mental RFC assessment indicated that Prescott can understand and remember complex tasks and that her cognitive skills are intact. (R. 282.) It was not error for the Judge to refuse to assign a simple-task restriction based exclusively on the alleged cognitive impairment, as opposed to a restriction precluding work having more than moderate complexity.

The record is more ambiguous when it comes to determining the functional limitations that would arise from somatoform disorder. Dr. Millis recognized the presence of the disorder in 2001, stating: "she does seem to have an excessive preoccupation with a long list of physical difficulties suggesting the diagnosis of undifferentiated somatoform disorder." (R. 342.) Dr. Millis offered certain "functional" observations as well, including that "[c]oncentration did not appear to be at all problematic"; that there was "no supportive evidence today suggesting that persistence and pace are an issue or in any way difficult"; and that "she would have no difficulty dealing with the general public or with peers and supervisors in a work situation." (Id.) For his part, Dr. Rines (circa November 2006) noted poor attention, but adequate concentration. (R. 217.)[7]

Dr. Hoch, in his capacity as a DDS expert psychiatric consultant, determined that somatoform disorder and borderline intellectual functioning were severe impairments and the

---

[6] Prescott received special education assistance at lower grade levels. (Tr. 3, R. 35.)

[7] The foregoing step 2 and step 4 discussion concerning the absence of severe depression of adequate duration, the absence of persuasive record evidence demonstrating social impairment, the presence of record evidence indicating good social functioning, the presence of evidence supporting an adequate adaptive capacity, and the presence of evidence of largely unimpaired cognition also addresses Prescott's contention that the Judge failed to make an individualized assessment of the impact of mental impairments in accordance with Ruling 85-15, which requires the adjudicator to consider a claimant's ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." (Statement of Errors at 9, citing Lancellota v. Sec'y of Health & Human Servs., 806 F.2d 284 (1st Cir. 1986).) The Judge made an individualized assessment of Prescott's mental impairments. (R. 24-28.)

Administrative Law Judge conceded that they were.  Consequently, each of these mental disorders must be deemed to impose more than a slight impairment when it comes to basic work functions.  The Judge allowed that this was so and that these impairment would limit Prescott's ability to concentrate to some degree, but the Judge assessed no more than an inability to concentrate on "highly complex or detailed tasks," which he reworded as a residual functional capacity to perform "moderately detailed instructions" and perform "simple to moderately complex tasks."  (R. 27.)  This finding is not necessarily inconsistent with Dr. Hoch's "summary conclusions" in his mental RFC assessment that there is a moderate limitation when it comes to "detailed" instructions and "extended" concentration (R. 280), but it exceeds Dr. Hoch's assessment that Prescott has an ability "to attend to simple tasks" (R. 282).

If the Administrative Law Judge strayed beyond the bounds of his legitimate discretion, it was at this point in his RFC finding, where he offered a distinction between simple versus moderately complex tasks.  This is a close question.  The balance of this discussion assumes, solely for the sake of argument, that a restriction to simple tasks, based on the confluence of all of Prescott's mental health diagnoses, is more in keeping with the record.  The question becomes whether the distinction the Judge drew between simple tasks and tasks involving moderate detail was essential to his finding that Prescott is able to perform work existing in substantial numbers in the national economy.  This must be adjudged at Step 5 of the sequential evaluation process because Prescott has no relevant past work to evaluate at Step 4.  For reasons that follow, the Judge's decision is sustainable even with a residual functional capacity limited to simple tasks.

**C.      Step 5**

At Step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform.  20 C.F.R. § 419.920(g);

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). The Commissioner must prove that the claimant's RFC and vocational profile (age, education, and work experience) enable the performance of substantial work. 20 C.F.R. §§ 419.920(g), 416.960(c)(1). Typically, the Commissioner will meet the step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC and vocational profile would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). However, in some cases, the claimant's RFC and vocational profile (age, education, and prior work experience), permit the Commissioner to find that the claimant is capable of performing jobs existing in substantial numbers based on "the Guidelines," Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 200.00, without resort to vocational expert testimony. 20 C.F.R. § 416.969a.

  The colloquy between the Administrative Law Judge and the vocational expert at the hearing was atypical. The Judge asked the vocational expert to supply the Dictionary of Occupational Titles (DOT) code numbers for certain occupations that Prescott had once performed, namely cashier, cleaner, and short order cook. The vocational expert supplied the codes and indicated that cleaner was medium intensity, specific vocational preparation (SVP) level 2, and that cashier is light duty, SVP 2, but failed to supply information about short order cook other than the DOT code. (Tr. 22, R. 54.) The Judge then asked whether all three jobs exist in significant numbers in the national economy, to which the vocational expert responded in the affirmative. (Tr. 23, R. 55.) Finally, although it never became part of his RFC finding, the Judge asked whether a need for unscheduled breaks beyond routine scheduled breaks or absences in excess of one day per month would preclude employment, to which the vocational expert

answered in the affirmative. (Tr. 23, 55.) That was the totality of the vocational expert's testimony. The Judge never supplied the vocational expert with any RFC to consider, never asked about erosion of the light and sedentary occupational base, and never asked the vocational expert to identify specific jobs that someone with Prescott's RFC and vocational profile could perform.

In his decision, the Judge observed that the Commissioner's medical-vocational guidelines would direct a finding of not disabled, if Prescott had the residual functional capacity to perform the full range of light work. He then expressed the view that Prescott's limitations "should have little impact on [her] ability to perform a wide range of unskilled work at the light level," resulting in a finding that she is "not disabled under the framework of that rule." (Finding 9, R. 29.) In support of this finding, the Judge offered additional observations "[a]long these lines," stating that "there is no apparent reason" why Prescott could not perform any one of the three jobs he asked the vocation expert about. (Id.) Prescott alleges error in both regards. As for the Judge's second, "no apparent reason" finding, Prescott says:

> It is the Commissioner's burden—not Plaintiff's—to establish that other work exists that she can perform. Here, the ALJ erroneously suggests that Plaintiff must provide evidence establishing that she is unable to perform the cited occupations. Similarly, the ALJ was required to show why Plaintiff's RFC would allow her to perform the occupations. Such a showing demands more tha[n] a statement that he sees no reason why she could not perform them.

(Statement of Errors at 10.) This is a fair statement by Prescott. The Judge misstated the law to the extent he suggested it was Prescott's burden, at Step 5, to prove to him that there was some "apparent reason" why she could not perform certain jobs that did not qualify as past relevant work for purposes of Step 4. However, the question remains whether the Judge's core rationale is sufficient, *i.e.*, whether a step 5 finding of not disabled can be resolved by reference to the Guidelines in this particular case, without relying on additional record support supplied by a

14

vocational expert. The discussion of this question is in three parts, the first two of which explain the ground rules.

### 1. *The Guidelines*

Varyingly referred to as "the Grid," "the Grids," or "Appendix 2," the Guidelines are rules adopted by the Social Security Administration that direct a finding of "not disabled" or "disabled" when a claimant meets certain "functional and vocational patterns." *Medical-Vocational Guidelines*, Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 200.00 ("Appendix 2"). Pursuant to the Guidelines: "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Id. § 200.00(a). However, if "any one of the findings of fact does not coincide with the corresponding criterion of a rule, . . . full consideration must be given to all of the relevant facts of the case." Id.

In practice, the Guidelines afford a shortcut to the Commissioner when it comes to addressing some claims at Step 5, at which step the Commissioner must demonstrate the existence of a significant number of jobs in the national economy that the claimant has the capacity to perform. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). In effect, the Commissioner is able to take "administrative notice" that sufficient jobs exist for a claimant when the claimant's RFC and vocational profile "coincide with the criteria of a rule." Appendix 2 § 200.00(b). "However, the existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded." Id. Thus: "If an individual's specific profile is not listed within this Appendix 2, a conclusion of

disabled or not disabled is not directed." Id. § 200.00(d). Such cases are "decided on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this Appendix 2." Id.

Because the Guidelines are structured in relation to strength, or exertional, limitations, "they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments." Id. § 200.00(e). For example, in cases like the instant case, where the claimant has both exertional and nonexertional limitations, the Guidelines do not direct an outcome, but they still "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." Id. § 200.00(e)(2). In such cases "full consideration must be given to all of the relevant facts in the case <u>in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations</u>, which will provide insight into the adjudicative weight to be accorded each factor." Id. (emphasis added). See also 20 C.F.R. § 416.969a(b), (c)(2), (d). This is what the Administrative Law Judge meant when he stated that the Guidelines provided a "framework" for his decision though they did not "direct" a finding.

   2.   *Using other regulations in conjunction with the Guidelines framework to support a finding of "not disabled" without the aid of vocational expert testimony*

The Commissioner may not rely on the Guidelines when there are non-exertional limitations that "significantly affect [a] claimant's ability to perform the full range of jobs" at a given exertional level. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted). However, in appropriate cases, the Commissioner may make a finding that a claimant's nonexertional limitations do not significantly erode the occupational base, without the aid of vocational expert testimony.

16

Appropriate cases are those in which the nonexertional limitation are "found to impose no significant restriction on the range of work a claimant is exertionally able to perform." Id. In such cases, "reliance on the Grid remains appropriate." Id.

> Whether . . . the [Commissioner] can satisfy his burden under step five without resorting to vocational evidence depends on how closely the claimant's characteristics and the Grid criteria overlap. [T]he Grid is meant to reflect the potential occupational base remaining to a claimant in light of his strength limitations. If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. Yet the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence.

Id. at 524-25 (footnote omitted).

This Court has affirmed "framework" decisions in the absence of vocational expert testimony, though not often. See, e.g., Lassor v. Astrue, Civ. No. 06-176-P-H, 2007 U.S. Dist. Lexis 50727, *3, *13, 2007 WL 2021924, *4 (D. Me. July 11, 2007) (affirming denial of benefits where claimant was restricted to light or sedentary exertion and the nonexertional limitations left a capacity to "understand, remember and carry out simple job instructions, relate appropriately to others in the workplace and sustain attention and concentration for simple tasks"). Ortiz is ample authority that decisions of this kind are appropriate in certain cases. See, e.g., Ortiz, 890 F.2d at 522-23, 525-26 (involving younger individual with limited education, semiskilled work background, restriction to light work, a nonexertional bending restriction and a nonexertional mental condition that limited him to unskilled, routine, repetitive work).

*3.     Vocational expert testimony was not required in this case*

In this case, the Judge found that Prescott suffers from mental impairments (somatoform disorder and marginally borderline intellectual functioning) that have both exertional and nonexertional implications, plus a respiratory condition that imposes a further nonexertional

limitation associated with exposure to concentrated irritants. Other than the environmental concern, Prescott's somatoform disorder prevents medium or heavy exertion, but not light or sedentary work. Her borderline intellectual functioning prevents complex tasks and, for the sake of argument, moderately complex tasks as well. At oral argument, the Commissioner offered sound arguments to explain why the regulations themselves support a finding that the occupational base is not significantly eroded for someone with this profile. I agree with the Commissioner that there is a path through the regulations that justifies a "framework" finding even in the absence of supporting testimony from a vocational expert. I have broken this path into the following steps:

(1) Prescott qualifies as a "younger individual" between the ages of 18 and 49. Given this age and her high school education and good literacy skills, and her ability to engage in both light and sedentary work,[8] the occupational baseline consists of roughly 1,600 jobs that Prescott can learn after a short demonstration or within 30 days that do not require special skills or experience. Appendix 2 § 201.00(h)(1), 202.00(a). If this were the complete picture, the Guidelines would direct a finding of "not disabled." Id. § 202.20 (table 2).

(2) The Guidelines state that ability to perform even a "wide . . . range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs." Id. § 202.00(b).

(3) Prescott's nonexertional mental impairments limit her to simple tasks. The Commissioner's regulations state that the concept of "unskilled work" essentially aligns with the "simple tasks" term of art common to nonexertional RFC findings. Unskilled work is described as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.967. Social Security Ruling 85-15 also states: "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions . . ." SSR 85-15, 1985 SSR Lexis 20, *11, 1985 WL 56857, *4.

---

[8] According to the Commissioner's regulations: "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

(4) A nonexertional mental limitation to simple tasks corresponds with unskilled work, so a simple tasks limitation does not reduce the unskilled light and sedentary occupational base.

(5) Prescott's respiratory limitation does not erode the occupational base more than marginally. Ruling 85-15 states: "Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." SSR 85-15, 1985 SSR Lexis 20, *22, 1985 WL 56857, *8.[9]

(6) Because the simple tasks restriction and the respiratory restriction do not erode the occupational base more than marginally, individually or in combination, it was not error for the Judge to find that a wide range of light and sedentary jobs are available for Prescott to perform based on the framework of the Guidelines.

Because substantial record evidence supports a finding that the constellation of nonexertional impairments in this record impose no greater vocational restriction than those found by the Administrative Law Judge at Step 4, it was not error for the Judge to rely on the framework of the Guidelines without eliciting supportive testimony from the vocational expert, given the regulatory definition of unskilled work and Ruling 85-15, which together demonstrate that the light and sedentary occupational base would not be significantly eroded.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final administrative decision and enter judgment for the Commissioner.

## NOTICE

---

[9] At oral argument, Commissioner's counsel also cited SSR 96-9p in support of the Administrative Law Judge's decision. That ruling concerns claimants with an RFC limited to less than the full range of sedentary work and is focused on whether and when the Grid would call for a finding of disabled, rather than a finding of not disabled. It is not relevant to the instant scenario. However, a look at the Grid for sedentary work capacity does indicate that someone 44 years old or younger with a high school education and no transferrable skills is also deemed "not disabled" in the absence of a nonexertional limitation. Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 201.27.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 21, 2010